United States v. Sterling and Vernon. Please report. My name is Roger Stavis and I represent the appellant, Kevin Sterling. The count two, which charged 924C, possession and use of a firearm, caused great confusion with the jury. That's because encompassed within that charge, the 924C charge, were three separate incidents, and the indictment had two theories, and a third theory of that possession and use was added at the close of the evidence. Any jury would be confused under these circumstances. The jury wrote a note to the judge saying, and I quote from page 292 of the appendix, We will appreciate your help understanding the nuances of certain elements of the law instructions. Specifically, A, can both parties be found guilty on the basis of aiding and abetting? B, similarly, can both parties be found guilty on the basis of the Pinkerton theory? The court in discussing this had joked among the lawyers, and I'm quoting from page 310 of the appendix, and then we'll get a note saying, well, can we convict one as an aider and abetter and the other as to Pinkerton? That was a joke for the benefit of my friends on the 17th floor across the street. I'm now before the friends on the 17th floor, and, Your Honors, it wasn't funny. It wasn't funny at all. There is no issue of interpretation. The jury asked, can both parties on trial be found guilty? In the abstract, of course, but it all requires a third principle, acting. The only answer, based on the record and the manner in which the case was tried, is no. Both parties can't be found guilty in this case on the basis of aiding and abetting or on the basis of Pinkerton. The judge, instead of answering no, told the jury on page 335 of the appendix, quote, and I have nothing to add, giving them no direction. In a sense, the judge told the jury, rely on the unclear instructions which caused you to write the note in the first place. If the court looks at the original charge with regard to aiding and abetting, which is based on the evidence in the record, the judge told the jury, accordingly, you may find either defendant guilty, not both. And this is page 1334 of the transcript. And it's page 1334 of the transcript. You may find either defendant guilty of the offense charged in count two on an aiding and abetting theory if and only if you find beyond a reasonable doubt that the government has proved that another person actually committed the crime. And when the government went to justify not giving further instructions, instead of other evidence, well, this mystery gunman or actually I was sitting here, I'd like to quote Judge Walker, pure imagination doesn't count. That was in the prior argument that Your Honor said that. And they're conjuring up, quote, this is the government at page 352. This is the government's submission on this issue. Quote, the only piece of evidence described above that the jury would have to reject in order to convict both defendants of aiding and abetting an unknown shooter, instead of finding that Kevin Sterling was the shooter and that Vernon aided and abetted Sterling, is Cosme and Jasmine's identification of Sterling as the shooter. That's not a rational basis. There's no evidence. The government was saying, oh, we can get both defendants guilty simultaneously with this mystery third person if the jury doesn't believe the identification. Was anything wrong with the judge's original charge? No. Isn't the original charge the one he relied on in responding to the jury? Yes, but what's wrong was the question that was asked. It was not responsive to the question that was asked. The Pinkerton charge was straight out of Sands' jury instructions. Everything was appropriate, but there was no fact. But he answered their charge by just simply talking about either one rather than both. Why isn't that sufficient? Because it's not responsive to what the jury's question was. The specific question of the jury was can both be convicted? And the evidence in the record was no. There is no mystery gunman. There is no evidence of a mystery gunman, and there's no way to conjure that up. There's no way to come back here to Judge Kaplan's friends on the 17th floor and say both could because maybe the jury would find that it wasn't this person and think up a third person. Why couldn't the jury, being referred back to the original statement, think, well, if Vernon was the shooter and not Sterling, then Sterling could be found guilty of aiding and abetting. And if Sterling was the shooter and not Vernon, Vernon could be found guilty of aiding and abetting. Because there was no evidence of that, Your Honor. There was no evidence whatsoever of Vernon being the shooter. There was no evidence in the trial. I mean, we can try to come up with theories. The evidence was that Sterling was the shooter. Correct. And the charge covered that. The original charge covered that. Yes, but the jury's question was unanswered and their confusion compounded. I hope you're going to devote some time to the exclusion of the Hartleman. Yes, Your Honor. I would just say that the judge, Judge Kaplan, chalked it up to just being cumulative because you had a key witness suffering from schizoaffective disorder describing his schizoaffective disorder and that that was somehow the functional equivalent of an expert forensic psychiatrist explaining and contextualizing that. Now, it was put into the—they tried to put a square peg into a round hole. Oh, the jury can't—an expert can't opine on credibility. It's not a question of credibility. It's a question of the impairment and whether the impairment impacts the ability to perceive or, in this case, hallucinate, as there was evidence of hallucinations, hallucinate events. Where in the record of Hartleman's testimony, out of the presence of the jury, during the direct examination is that point brought out? I can supplement with a specific citation. Well, I went through this testimony pretty carefully, and it looked to me that what happened here was that the aspect of the exam was pointed out and the diagnosis of the doctor 18 months prior to the trial in connection with the assault at the jail was brought out. So the diagnosis was brought out, so the illnesses, and then the medications were brought out. But any connection between how that person would perceive reality was not brought out by counsel for the defendants at the hearing until the government—until redirect. The government raised the issue for the first time, and then there was some testimony on that. But then on page 1121—and correct me if there's some other place that indicates differently— but on page 1121, Mr. Goltzer says, we had not intended, under the offer of proof that we did, to go into the issue of whether the doctor could render an opinion about his credibility. The government seemed to open that door. I don't want it being held against the defense. We still have no intention of doing it. But if the government is permitted to go into it, obviously we should be permitted to rebut it. In other words, anticipating the possibility that the judge might allow the testimony to go forward. At that point, the defense was still taking the position that anything that bore on credibility, a direct connection between credibility and what the doctor would say, was not going to be something that would be explored. I agree with that. I don't believe it's a credibility issue. I don't believe when you have a mistaken eyewitness that you could say it's credibility and the witness is lying. You're saying it's a capacity issue. Correct, Your Honor.  And I've been consistent, and counsel was consistent. The defense is capable of distinguishing truth from fabrication, from hallucination. From hallucination, not fabrication. That's correct, Your Honor. I don't disagree with Judge Walker that the government helped you out a great deal by eliciting from the expert that the expert could not render an opinion as to whether this witness could distinguish truth from hallucination. But the fact that it came from the government doesn't make it inadmissible. It seems to me that the government very clearly brought out the great importance of the witness's testimony. If an expert on examining this person cannot render an opinion as to whether the person is capable of distinguishing truth from imagination, from imaginary facts, I don't see how that person's testimony can be merely cumulative or of no help to the jury and the things that the district judge said about it. I agree with you, Your Honor. Well, my only concern here is that it seemed that Mr. Goltzer disavowed that line of questioning. When he said we had not intended to go into the issue of whether the doctor could render an opinion about credibility, the government seemed to open that door. I don't want that being held against the defense. We still have no intention of doing it. So my impression I got from this was that if the doctor had been testified, that evidence would not have come out. Because the defense was abjuring it. Two points. First, Mr. Goltzer was Mr. Vernon's attorney, not Mr. Sterling's attorney. Second of all, Your Honor, we who practice criminal defense in the federal courts are aware of the general law and the case law of this court and other courts that you can't have an expert testify into credibility. So we were making a proffer why this particular case is different and why this witness is very important. We have a constitution . . . I want to know where the proffer is because if you were proffering the point that Judge LaValle is making, I'd maybe see the case in a different light. So where is the proffer in the record? I can't . . . I have a general sense of the record. I've read the record. I can't . . . I don't have that citation available. The testimony that was elicited . . . Of Dr. Howe Talon. Correct, Your Honor. Correct. And as you have said, credibility is a different issue. The issue that was abjured by your co-counsel was abjured related to believability. Is this an honest witness or a dishonest witness? You weren't offering any . . . you weren't suggesting that the person could testify about that. But that's a different matter from the capacity of this particular person, let alone anyone who has these diseases. It's being an effect of these diseases to distinguish between reality and fiction. And that's correct. And this key defense witness was precluded, and that led to an unfair trial and an unfair verdict. Before we leave your red lights on, I want to know how key this witness was. He went on three of the trips, and Cosme went on seven or eight of them. Right. Right? And when he was arrested, he had the drugs on him. And where he testified at meetings in which Cosme was present, Cosme corroborated what he said as a general matter. And Cosme was the witness on the shooting, not Henry. Correct? Correct, Your Honor. And the jury convicted on the shooting of the brandishing and use of the gun, not the simple possession. In other words, the verdict form distinguished between the holding of the gun and shooting it, as opposed to just the possession in the car, which is what Henry testified to. Correct. And the jury found on the former, not the latter. Right. Right? Yes. So it would just be the drug counts that would be involved. No, Your Honor. Why not? Because Roshane Henry was the sole witness to the two additional firearms under Count 2 of 924C. That's at page 754 to 757. He also was the only one to testify to an extremely damaging statement that occurred in the car. Roshane Henry was the only one to testify that my client was alleged to have said, someone once owed me money, and now they're not breathing anymore, at page 778 to 779 of the trial record. So it was quite important, and Roshane Henry was not just cumulative of the Cosme testimony. No, I'm not talking about that part. I'm talking about the firearms offense. The jury was asked on the verdict form, as to Kevin Sterling on Count 2, the firearms offense, guilty, question A, did the government prove beyond a reasonable doubt that this defendant is responsible for brandishing a firearm? Yes. Now, there was no testimony from Henry about brandishing a firearm. There was testimony from Henry about firearms being in the car. Am I correct? Correct. Yes, he was arrested. So the jury found Sterling guilty of brandishing, and question B was, did the government prove beyond a reasonable doubt that this defendant is responsible for discharging a firearm? Henry did not testify to any discharging of a firearm. Am I correct on that? I don't believe so. No, he was in jail by that time? Correct. Okay. And then the same thing, the same two questions were asked of Vernon, and the answers were the same. Yes. Okay. I just wanted to be clear on that. Yeah. Well, I have the citations to the record showing why Roshane Henry was not cumulative, which I've mentioned, and I'm way over time, and there are other attorneys. Thank you, Your Honors. Thank you, Mr. Stavis. You've reserved a minute for rebuttal. Ms. Reese? Good morning, Your Honors. May it please the Court? My name is Rachel Reese, and I represent the appellant, Alonzo Vernon, in this matter. Not to belabor the points that Mr. Stavis has brought up, but I think that one of the issues raised by Mr. Vernon was extremely similar to the issue raised by Mr. Sterling. However, in our brief, we did expand on that on several points. And I think that his Honor brought up an important part of our argument is that the injury and the confusion of the jury's questions, that was the beginning of the error. The error began when the district court instructed the jury on the Pinkerton theory. And as Mr. Stavis mentioned, this was a case where the government sought to prove count two, the 924C offense, through three separate theories of liability. Direct liability, under aiding and abetting, and then under Pinkerton. During the charge conference, Mr. Vernon's trial counsel objected to the giving of the Pinkerton instruction because of the fact that it was confusing, and then the conversations that were had thereafter, it was alluded that it was confusing because there was no evidence that the Pinkerton theory would be applicable in this circumstance. So given the number of possibilities, it would be nearly impossible for the jury to decipher which theory they were actually finding the defendants guilty of, specifically Mr. Vernon. Impossible because inadequate proof of conspiracy? No, Your Honor. I think that one of the factual things that was just brought up in the beginning argument was the fact that the government's theory of this case, from the beginning and relying solely on the shooting incident, was that Mr. Sterling was the shooter, and then Mr. Vernon assisted him in that, in some respect. The theory from the very beginning was that there was two individuals in this car. Those two individuals were these two defendants. So under the Pinkerton theory, there was no evidence that some other individual from the conspiracy actually committed these acts, and that Mr. Vernon or Mr. Sterling could have known that that would happen. That was just never the theory that was put forward by the facts. So that was the argument of Mr. Vernon's trial counsel, and I believe that— The jury—I think the charge permitted the jury to conclude that if there was a shooting, it was by a member of the—and we're not sure who it was, even though there was evidence of Sterling. Maybe the jury would disbelieve certain aspects of Cosme's testimony on that, but still accept the fact that there was a shooting by, in furtherance of the conspiracy, by someone, and that Sterling knew that—I mean, Cosme knew that he hadn't paid the debt, and therefore had reason to fear. I mean, you know, it was—maybe it wasn't necessary in this particular case, but if the jury accepted Cosme's testimony that Sterling was the shooter, but the jury might reject that. And on that point, Your Honor, I think that that would be reasonable in some circumstances, but in this situation, the argument of somebody else from the conspiracy was never even a topic that was breached or even submitted until the questions from the jury, which I think this all kind of plays a part. It's a, you know, domino effect. You have an instruction that was not appropriately put in for the jury to consider, and the jury has these questions because they are confused as to how they are allowed to convict these two defendants, and then that eventually leads us to the verdict, which is our second extended point on this. Was your argument that a Pinkerton charge never should have been given? Yes, Your Honor. In this specific situation, in these facts, that is Mr. Vernon's position. And I think that the prejudice that is suffered from this kind of goes, like I said, after the questions that were relayed by the jury. Your Honor mentioned the fact that this verdict form on count two, specifically the jury found Mr. Vernon and Mr. Sterling guilty of discharging and brandishing a firearm. So that leads us to believe that they had to have found them guilty on the shooting incident alone. So in regard to that incident alone, since the government's theory from day one was that Mr. Sterling was the shooter, Mr. Vernon was his accomplice driving him, that does not fall under the Pinkerton theory. And since they did find them guilty on that specific instance, we don't know what theory they found them guilty on. So without any sort of special interrogatory asking the jury to explain which specific theory they were using, we do not know if the verdict is supported by a theory that's supported by the evidence in this situation. And that's the reason why Mr. Vernon's trial counsel specifically asked it for that. Can you cite a case where Pinkerton charge has been given and the jury has, and we have held that unless there are specific verdict questions relating to whether or not the jury found guilt on the basis of the Pinkerton charge, the conviction cannot stand? Your Honor, there are no cases that we can cite to at this point. However, I think that the facts of this case are distinguishable from, I couldn't find any case where these specific types of questions from the jury were asked. And I think that is very telling in this situation and it provides a lot of support for our position, is that the jury was clearly confused. They were asking a question about how they could convict Mr. Vernon and Mr. Sterling. And because the question that they asked, as Mr. Davis pointed out, it was incorrect. They could not convict both Mr. Sterling and Mr. Vernon on this theory of them both being an aider and a better or them both being guilty under the Pinkerton theory. So because that question was posed. I don't understand why the Pinkerton theory shouldn't have been given and why it was inappropriate. There are two people together and the jury finds that they are co-conspirators towards this objective. And one of them, but the jury doesn't know which, shoots somebody. Why can't they both be found guilty on the Pinkerton theory? Your Honor, that's a very good point. And I believe that the answer to that is because the jury has already been instructed and the indictment specifically charged both of these defendants under the aiding and abetting theory. So if that's the way that the jury looks at it, the aiding and abetting theory of liability would be sufficient. They wouldn't have needed to have been instructed on the Pinkerton theory. They didn't need to be, but why is it inappropriate? Why is it impossible? I think it's a matter of just the number of possible theories. Someone, a co-conspirator, the jury could find beyond reasonable doubt that a co-conspirator committed the crime of doing this shooting and the other person was part of that conspiracy and qualified for Pinkerton. Why does the jury have to know which one was the shooter? I think that with the Pinkerton instruction, the issue is it goes kind of beyond the aiding and abetting. That's arguing that there is another person from the conspiracy that is involved. Well, why can't it just, I think, or at least I will ask the way I heard Judge LaValle ask the question, why can't it be the conspiracy between the two folks? You need two, you got two, and one or the other was the shooter. Your Honor, from the cases that this Court has decided, just in reference to Pinkerton in general, the cases have been more along the lines of, to give an example, if we look at the car situation, one of the other two incidents with the firearm just being present, not necessarily being discharged, one of those occasions the testimony was inconsistent about whether Mr. Vernon was actually present in the vehicle. So under that sort of circumstance and situation, he could have been found guilty under Pinkerton if he knew as part of his conspiracy that Mr. Sterling would have a firearm on his person while he was furthering the crime of collecting the money from these individuals and that sort of thing. Because the government was arguing for this specific incident that they were both present under Pinkerton, it was Mr. Vernon's counsel's position and our position today that that would not have necessarily applied and was confusing for the jury, which obviously ultimately led them to ask the questions that they did. Thank you. Thank you, Ms. Reese. Mr. Skinner. Ms. Reese, you've reserved two minutes for rebuttal. May it please the court and good morning. Drew Skinner for the United States. I represented the government at trial below. Let me start on the expert witness point. First, Judge Kaplan understood that in the first instance this was a credibility argument made by Sterling's counsel below. It's a letter that's not in the appendix, but it's dated April 7, 2017, on the docket from Sterling's counsel, poses it as a credibility question. Now, no question at the hearing. Questions were also asked about reliability, and Judge Kaplan understood that. I just don't understand how you could have objected to this evidence, much less how the judge could have sustained it. But it's extraordinarily important evidence if an expert witness, an expert psychiatrist, comes in and testifies that this witness was incapable, that the psychiatrist is incapable of answering the question whether this witness could distinguish reality from imaginary. I just want to be careful. That is a very, very important thing. And how could the judge think that it was cumulative to the person himself having said, oh, I have hallucinations and problems distinguishing. I mean, the very fact that he says he has problems distinguishing shows that he recognizes the difference. The psychiatrist says, I can't tell whether this person can distinguish fiction from fact. That's very, very important evidence. Judge, I don't think that's right. That last part, and I just want to come back to the record to make sure that we're reading the record accurately. I think that this conversation started on A271 of Sterling's appendix, where Mr. Goltzer, for Mr. Vernon, was asking questions like, could a psychosis affect the ability to accurately report historical facts? It could, yes, answer. Could a psychotic episode possibly impact adversely on an ability to distinguish what really happened? It could. And could a person who suffered from those episodes have difficulty recalling what's real and what's not? At times, he said. Even if it went no further than that, it's pretty important evidence for the jury. But go ahead. Then on redirect, the government asked, just to clarify, do you have an opinion as to whether, with respect to this witness, he can accurately report historical facts? No opinion. Do you have an opinion as to whether he can accurately distinguish what happened in the past? No. Do you have an opinion as to whether he can tell what's real or not? No. I don't think the reading of those questions should be that the expert has evaluated Mr. Henry and come to any opinion at all about whether he can decide those facts. It's as if an expert has no opinion, having examined the person, knowing that he's psychotic, knowing that he's schizophrenic, and the expert has no opinion whether he is capable of distinguishing fact from fiction. Right. That's pretty important for the jury. Judge, I just want to be careful about when we're using the word no opinion. I think what the testimony— Do you have an opinion? No. That's no opinion. And the reason that he had no opinion there is because the expert examined Mr. Henry on one day in September 2015. You're reading an interpretation that you would like to read into it. I'm reading what the expert said. I have no opinion whether he can distinguish fact from reality. Was he asked to give such an opinion? No. Did his letter purport to go into that? It did not, Judge. Wasn't he asked only to determine in connection with the assault that took place in the jail whether the defendant had the state of mind to be culpable and whether the facts were such, given his medical situation, that he might be entitled to mitigation of sentence? Absolutely correct. And so at no point was the psychiatrist ever asked to opine on the veracity or not. We're not talking about veracity. Of this person. Or the capability. That's absolutely correct. As far as his ability to give testimony is. That's right. And Judge Kaplan entirely recognized that. And when Judge Kaplan ruled, he didn't rule just on credibility. He ruled on reliability as well. And Judge Kaplan found important that in that report, the expert himself found Mr. Henry to be more reliable than the prison guards in describing that prison incident after viewing the video of that incident. It's at appendix 284 in Sterling's appendix, Judge Kaplan's ruling. He testified he has reached no conclusions regarding the reliability of Mr. Henry as a witness. Reliability. Then Judge Kaplan discussed the fact that the expert himself relied on Henry's recounting of that prison incident. And then on A286 of Sterling's opinion, Judge Kaplan found not just as to credibility, but Mr. Goltzer brought out that psychotic episodes could impact the ability to accurately perceive and narrate, if I remember the testimony correctly, historical events. Then Judge Kaplan said, well, sure, could. The question is did. That's the important distinction. Any testimony by the expert about the possible effects of that type of illness meant nothing to the jury when the jury had Mr. Henry's own testimony about the symptoms he did suffer, and more importantly, where the expert had no opinion as to the witness's reliability or credibility. In other words, how those symptoms of the disease in general impacted Henry. He did not examine that at all. Had he not been asked to sit in while Henry was testifying? No, absolutely not. In fact, Judge Kaplan went out of his way when the defense late subpoenaed this witness, Judge Kaplan went out of his way to make that witness available for the defense to get the full proffer of what the defense wanted to get out of that witness on the record. He double-checked with them. Is that all you have to offer before I rule? And then he found that, number one, it wasn't probative for the reasons we just discussed. Why is it not appropriate, completely stopping short of the issue of the meaning of the questions and the answers that you elicited, when the psychiatrist answered the questions that were proffered by the defense, explaining what are the characteristics and the effects of psychosis and schizophrenia, and explaining that it can cause a witness to be incapable of distinguishing reality? Why is that not appropriate matter, important matter, to be brought to the jury with respect to a witness who is psychotic and schizophrenic? Judge, here it would have been just cumulative of what Henry already testified to. But Henry is not an expert. Henry is not somebody who can tell the jury with any credibility because he has no knowledge, no expert knowledge of it, about the consequences of psychosis and schizophrenia. But what I would add is that, in fact, the expert's testimony was less helpful to the jury because the expert didn't connect that illness to any impacts on Henry himself. It was only Henry, first of all, who even told the expert that he suffered from hallucinations. That was all based on Henry disclosing that to the expert. The jury learns from a later study that this person has been diagnosed as psychotic and schizophrenic. But I don't know what that means. You don't know what that means. The jury doesn't know what that means. Then an expert is called who will tell the jury what are consequences of psychosis and schizophrenia. It can mean inability to distinguish fact from fiction. Why is that not really important? Because, number one, the expert couldn't tie it to Henry himself, couldn't say that this person suffered from those particular symptoms, especially couldn't say it during the relevant time period of the testimony, which was about six or eight months before the interview. The interview was also about 18 months before the trial. Secondly, it's cumulative because Henry himself said what his own symptoms were, which in this case were very useful for the defense. It was hallucinations. It was hearing other voices. That's all... But he knew they were hallucinations. Right. What he testified to... But he knew they were hallucinations. It's important to... If you know that, you're distinguishing fiction from fact. Correct. It's important to look at the particular types of hallucinations. He testified about, as well, which were hearing a drumming in the ears or hearing basically a good angel and a bad angel telling him things to do. Those were things that were not relevant to this case. It was plain that, from anybody's perspective, the expert and Mr. Henry's... That's a far difference from being unable to distinguish reality from fiction. Correct. Correct. And had absolutely nothing to do with whether Henry hallucinated months and months of his life of going up to Ithaca, selling drugs, which was entirely corroborated by Mr. Cosme, who was by far the most important cooperating witness in this case. I should mention the hallucinations point. Of course it came out on cross. It came out in the summation. The redirect on the hallucinations was devastating because the government was able to say, oh, what about this text message from Mr. Sterling to you asking about how the bus ride is going? Did you hallucinate that? Of course the answer was no. The additional evidence beyond what Judge Walker has already pointed out are customer lists that were recovered from Leonard Sterling up in Ithaca, were the drugs found on Henry and Leonard Sterling, were texts between Henry and Cosme about the trips going up there. I'm not suggesting the defendants aren't guilty. I'm saying that this was very important evidence to allow the jury to hear. Judge, without saying it, I transition into the harmlessness analysis. Before I even get— You only had one other witness, and he wasn't even a witness to a lot of the important things, but the only witness you had in addition was one of the people who was impeached by his situation as a cooperating witness who has the usual incentives that are always argued, who falsified for his own benefit. On the drugs, let me just be clear. Mr. Cosme was a witness to a lot of important things. In fact, I can't think of anything really that Henry was present for that Cosme was not, except for the guns in the car incident. Cosme testified to Henry's involvement. Correct, absolutely. Henry's involvement included his own arrest in which 250 bags were on a person. That was physical evidence. In the car with Leonard Sterling, nonetheless. In the car with Leonard Sterling, apart from anything that Henry might have said. That was true. And then Cosme is—where Henry does testify about the incident, Cosme corroborates that to a great degree as well. Absolutely. And so that goes to the question of harmless error. Correct. But as far as the guns are concerned, I don't see any involvement of Henry at all in the gun charges that resulted in conviction. Your Honor, I was absolutely correct about that. It's clear that the jury— He was in jail at that time. Correct, correct. It's clear the jury convicted on discharge. The last thing I'll say about harmlessness is just that even before we reach all the other evidence of the drugs is that even if the expert's testimony was allowed, remember what it would be, which would just be a description of the illness without any actual applicability to Henry. That would just be a piece of what the defense was able to do with Henry already on cross-examination, impeaching his credibility and his reliability. So the flip side would be, or counter-argument would be, if the doctor had examined him and reached a conclusion that he was suffering hallucinations historically, the government wouldn't have objected to that evidence. I think that's right. I mean, we can imagine various hypotheticals, but if the expert had something to say about either Henry's ability to testify currently at the trial, which he did not, because he saw him a long time before the trial, or if he had something to say about the time of the crime, which he did not, he reviewed some reports from 2006 to 2011 and then saw him on one day in September 2015, and he wasn't even focused on that. He was focused on his culpability in another case. In the jail instance. Right. So even if the court were to find some error, which we think they should not, consider the slight marginal benefit that that possibly could have had just on the issue of Henry's credibility, which was already attacked, I think he testified for about four hours. A lot of that was cross-examination. Never mind, before we even get to all the other evidence of the drugs, even if the jury were to throw out all of Henry's testimony, which I don't think they would have, having simply heard the expert when they already heard him say, I hallucinate all these things, I've heard all these things. I want to come to the juror note question. First, as Judge Walker noted, the instructions were absolutely correct. No one disputes that. Most importantly, Judge Kaplan asked the right threshold question here, which was, should I be interpreting this note? Should I be trying to psychoanalyze what the jury is saying in this note? He said, no, I don't want to intrude on the jury's deliberations. The reason that question is important is because the note could have meant a lot of things. It could have meant, first, what defense asserts on appeal and below, that the jury is considering, can we convict both of these men of aiding and abetting a third unknown person? But it also could have meant, can we convict Kevin Sterling of aiding and abetting Alonzo Vernon? Because the jury knew that the government's theory was that it was the other way around, that Vernon aided and abetted Sterling. It could also have meant, as Judge Kaplan recognized at the time, can we convict one of the defendants on aiding and abetting one of those guns in the car, and can we convict Vernon of aiding and abetting the shooting? Or any combination of those three incidents and defendants. It could also have meant, can six of us find that Kevin Sterling was the shooter and that Vernon aided and abetted him, and can six of us find that Sterling did the shooting and Vernon aided and abetted him the other way around. Judge Kaplan was correct not to try to figure out which of those matrixes of possibilities the jury was talking about. It would have intruded on their deliberations. Instead, he pointed them back to their correct notes, which one of the defendants agreed was the right way to respond. That's Vernon. So pointing them back to those correct notes can't possibly be arbitrary or rational, as the court would have to find, that Judge Kaplan abused his discretion. I'll last just note that nothing about that changed the theory of the case. The jury was never told by the government or Judge Kaplan anything about an unknown shooter. That was only brought up by the defense. And finally, we then reached the point that even if the jury had understood that to mean and were asking the question about can we convict both men of aiding and abetting an unknown person, the evidence was plainly sufficient of that. It's taking out evidence that the jury would have to do, basically not believing two of the identifications in order to not find that. It's not adding any evidence that wasn't there. All the evidence was there for that decision. I see my time has expired. Unless the court has any questions, we'll rest on our submission. Excuse me. Thank you, Mr. Skinner. Yes, very briefly. The note speaks for itself. At page 8292, it doesn't require interpretation. It does, however, require finding a mysterious gunman somewhere in the record. With regard to the issue of Dr. Howe Talon, reading from page 271 to 272 of the record at page 29 of my brief question, and is it possible that someone might believe they can distinguish between what is real and unreal and be wrong about it because of their psychiatric illness? Answer yes. It's an extraordinarily significant thing to preclude a defense. I'm old enough to have appeared before you, Judge LaValle, as a district court judge, and the district court judge here should never have knocked the defense out of the box on testimony that was that important. It denied my client a fair trial, and I ask the court to reverse and remand to the district court. Thank you, Mr. Stavis. May it please the Court. Just to touch on one thing about the admissibility of the doctor's testimony. I think the one thing the government stated was that, you know, Mr. Henry admitted I hallucinated all these things, I see all these things. The problem with that is that the government was unable to rehabilitate him on redirects and, like he's pointed out, say, well, you weren't hallucinating at this specific time, and he's able to say yes. I think that the testimony of the doctor would have been able to put that into context for the jury to make that determination as to whether or not that was believable. Walk me through that. Connect the dots on what you just said. If the testimony had been able to come in, the doctor would have said, sorry, the underlying testimony was? So Mr. Henry testified that he does hallucinate, had hallucinated in the past, was able to say that he had hallucinated. On redirect, the government was able to rehabilitate him and say, but you weren't hallucinating during these facts you're testifying to, that sort of thing. Although the doctor couldn't opine that Mr. Henry was hallucinating, the doctor would have been able to give the opinion that people who suffer from this type of disorder do hallucinate, and if they are hallucinating, they cannot tell, they cannot say whether or not they're hallucinating or whether or not what they're experiencing is real. So Mr. Henry's testimony that he wasn't hallucinating, he's assuming that he wasn't hallucinating. Although nobody could specifically say that he wasn't, the doctor would have put some context to that as well. But the doctor would have had to say, but I don't know whether he was hallucinating about whether he was hallucinating. Absolutely, Judge. Then just as to the point about the- Where does that get us? I think it goes to the argument that would have been able to be made about the credibility of, or the reliability of the testimony of the witness. Need more? I don't believe so, Judge. I think that in this set of circumstances, because of the admission by Mr. Henry, I think that giving some context to that, I think that it would have been able to provide- Did he make the admission that I don't know whether I was hallucinating? I mean, he basically said that he knew he was not hallucinating. There was also testimony from Cosme that backed up the fact that he wasn't hallucinating, because Cosme testifies to various meetings that they're all at, consistent with Henry, and there's no evidence in the case about Cosme's mental health. No, Judge, there's not. I think that the overall fact that these two witnesses are the entire case against these defendants, I think that obviously their credibility is directly at issue. I believe it was discussed about how obviously Cosme's- You say the entire case. The government's pointed out that there were text messages. Correct. The government's pointed out that Henry was found with 250 packages on him, so there was other evidence. There was some physical evidence and also communications, and I think cell tower information as well. So there was some other evidence beyond just these witnesses, right? Yes, Judge, but I think that with that evidence in mind, these two witnesses were very large to the government's case. They would not have been able to make their case without them, so I think that their credibility was a very important issue that the jury had to determine, and I'm sure that's what they sat down and figured out. And I see my time has expired. If I could just touch on one more point. The government mentions the fact that the questions posed by the jury during deliberations was not clear. I would just like to point out one thing from the record. The jury asked three specific questions. Can both parties be found, and this is in Mr. Vernon's appendix at page 164. Can both parties be found guilty on the basis of aiding and abetting? Similarly, can both parties be found guilty on the basis of the Pinkerton theory? The last question was, if defendant found guilty of the discharge of a firearm via Pinkerton theory, does that mean that the defendant is responsible for both brandishing and discharging a firearm? To be clear, the defendant does not necessarily need to fire a firearm or even be present at the site of shooting to be guilty of discharging a firearm under Pinkerton liability, correct? That third question, I think, puts into context what they are asking of the other two, because they're saying to be convicted under Pinkerton means that one of these people was not there. They're saying, to be clear, the defendant does not necessarily need to fire a firearm or even be present at the site to be found guilty of discharging the firearm under Pinkerton. When they're asking if both defendants can be guilty under Pinkerton, I think that puts into context that they thought there was this other person that could possibly be there. So with that, Your Honors, I would ask that the Court reverse and remand for Mr. Vernon to receive a new trial. Thank you. Fine. Thank you, Ms. Reese. Thank you, Mr. Stavis. We'll reserve decision in this case.